AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Middle District of Pennsylvania

FILED
HARRISBURG, PA
APR 30 2024
PER _____ KJN
DEPUTY CLERK

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Black Schok Smartphone, Model: SV55216, SN: 0810708220003708

Case No. 1:24-mc-0370

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Middle _____ District of _____ Pennsylvania _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 924(c); 21 U.S.C. 841(a), 21 U.S.C. 846 | Poss. Firearm in Furtherance of Drug Trafficking Offense; Distribution and Poss. with Intent to Distribute Controlled Substance; Conspiracy to Distribute and Poss. with Intent to Distribute Controlled Substance |

The application is based on these facts:
I, Darrin Bates, a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, being duly sworn, depose and state:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

TFO DB
*Applicant's Signature*
Darrin Bates, TFO ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by *(specify reliable electronic means)*.

Daryl F. Bloom
*Judge's signature*
Daryl F. Bloom, U.S. Magistrate Judge
*Printed name and title*

Date: 04/30/2024

City and state: Harrisburg, Pennsylvania

## CONTINUATION OF AFFIDAVIT
## IN SUPPORT OF SEARCH WARRANT

1. I make this affidavit under Federal Rule of Criminal Procedure 41 for a search warrant authorizing the examination of a cellular phone, the "Target Device," described in **Attachment A**, and the extraction from the Target Device of electronically stored information described in **Attachment B**.

2. On or about October 1, 2023, a Confidential Source (CS) purchased cocaine from Akbar Turner as part of a controlled buy that was arranged by calling Turner at (215) 554-7512.

3. On or about October 5, 2023, law enforcement executed a search warrant at a residence in Harrisburg, Dauphin County, Pennsylvania, where it was believed Turner lived. During the execution of that search warrant, law enforcement seized from Turner's room the Target Device, a digital scale, a firearm, controlled substances, and loose heroin bags. In a room attributed to another individual, Wali Young, law enforcement also seized controlled substances, two firearms, heroin bags, ammunition, and digital scales.

4. On January 31, 2024, a federal grand jury returned an indictment against Turner and Young for drug-trafficking and firearm offenses. (*See* Doc. 1, No. 1:24-CR-20 (M.D. Pa.) (Wilson, J.) (***Indictment***.))

5. In this affidavit, I do not set forth all the facts within my knowledge about the matter. I merely intend to provide enough facts to show that there is probable cause for the requested search warrant. Moreover, the information set forth in the sections below is either known to me personally or was related to me by other law enforcement personnel.

### AFFIANT BACKGROUND

6. Since July 2002, I have been a Police Officer for the City of Harrisburg, Bureau of Police. Before that, I was a Fairfax County Deputy Sheriff in Fairfax County, Virginia for approximately two years.

7. I am a graduate of the Harrisburg Area Community College (HACC) Police Academy Act 120 Program and Fairfax County Criminal Justice Academy of Virginia. I have a Bachelor of Science degree in Criminal Justice-Social Science from Elmira College in Elmira, New York.

8. Since 2017, I have been assigned to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) as a Task Force Officer (TFO). Currently, I am currently assigned as a TFO to the ATF Philadelphia Field Division, Harrisburg Field Office, consisting of ATF Special Agents whose primary responsibilities include investigating individuals or groups that have committed violations of the federal firearms and narcotics laws.

9. During my tenure as a Police Officer and TFO, I have: received 15 merit and valor awards to include "Officer of the Year"; made over 1,900 drug and firearm related arrests; conducted and participated in hundreds of investigations; and debriefed, or participated in debriefings of, defendants, informants, and witnesses with personal knowledge regarding federal and state firearms and narcotics violations. Further, I have participated in all aspects of those investigations, including conducting surveillance and analyzing information obtained from court-ordered cellular phone extractions. As well, I have been the affiant for hundreds of affidavits, in support of search and arrest warrants. Last, I have assisted and participated in hundreds of felony

drug arrests and search warrants and completed numerous drug-training classes and seminars.

### THE TARGET DEVICE

10. I request authorization to examine the Target Device, a cell phone, as described in Attachment A.

11. The Target Device is in the ATF's possession within the Middle District of Pennsylvania.

12. The warrant that I apply for would authorize the forensic examination of the Target Device for the purpose of identifying electronically stored data and information particularly described in Attachment B.

### PROBABLE CAUSE

13. Between approximately October 1, 2023 and October 5, 2023, Harrisburg Bureau of Police, Organized Crime Vice Control Unit (VICE) conducted a drug investigation into Turner.

14. During the investigation, Turner participated in a controlled buy with a CS. VICE observed Turner exit and return to 18 S 16th Street Harrisburg, Dauphin County, Pennsylvania 17104.

15. VICE further learned from the CS that Turner had a partner named "Wali" (or "Walley") who was also involved in selling controlled substances.

16. On or about October 5, 2023, VICE executed a search warrant at 18 S 16th Street.

17. While executing the search warrant, VICE located Turner and Young inside 18 S 16th Street, which was determined to be an illegal rooming house.

18. Turner gave VICE consent to search his room, and, among other things, VICE seized two digital scales, approximately 23 bags of heroin, a .22 caliber Remington semiautomatic rifle with no serial number, and the Target Device.

19. Additionally, while executing the search warrant, VICE observed heroin bags in plain view of a room that was later associated with Young.

20. Upon obtaining a separate search warrant for Young's room, VICE seized, among other things: two vacuum sealed bags containing approximately 4,850 bags of heroin; an N.E.F. Co, R92, .22 caliber revolver bearing serial number: NF012808; a Sport King, SK-100, .22 caliber pistol bearing serial number: 703289; and two digital scales.

21. A search incident to Young's arrest resulted in the seizure of approximately $1,163 dollars.

22. VICE determined that the heroin bags found inside Turner's room and the heroin bags found inside Young's room appeared to be the same.

23. With respect to the Target Device, VICE took it into custody as evidence where it stayed secured in the HPD evidence location until January 30, 2024, when it was turned over to me. I then placed the Subject Device into ATF custody, storing it in the evidence vault.

24. On January 31, 2024, a federal grand jury indicted Young and Turner for drug-trafficking and firearms offenses. (*See* Doc. 1, No. 1:24-CR-20 (M.D. Pa.) (Wilson, J.) (***Indictment.***))

25. On March 06, 2024, Turner was arrested on the Indictment.

26. Upon his arrest, I interviewed Turner, who agreed to speak with me after I provided him Miranda warnings.

27. Turner indicated to me that there would be conversations on the Target Device between him and the CS.

28. Furthermore, based on my training and experience, and the experience conveyed to me by veteran law enforcement officers, I know that individuals like Turner and Young who engage in drug trafficking, will utilize cell phone devices and electronic devices like the Target Device to help facilitate their illegal activity. For example, those individuals will commonly use cell phone devices to store names and phone numbers of co-conspirators, as well as contain conversations between co-conspirators. Based on my training and experience, I know that cellphone devices, like the Target Device, can store information for long periods of time. Therefore, cellphone devices, like the Target Device, can store text message conversations, phone call logs, data from social media and other messaging apps stored on the physical device.

29. In my training and experience, I also know that persons like Turner and Young often use electronic devices, like the Target Device, to facilitate and conceal their criminal activity. As well, I have found that during this criminal activity, persons like Turner and Young often take photographs on their cellular phones of cash and firearms, make rap music videos with their firearms and about drug trafficking, and receive photographs of firearms as well sending them and storing them on social media.

30. In my training and experience, I know that the Target Device has been stored in a manner in which its contents are, to the extent material to this matter, in substantially the same state as they were when the Target Device was seized and first came into the ATF's possession.

## TECHNICAL TERMS

31. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. **Wireless telephone**: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. **Digital Camera**: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. **Internet**: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

d. **Portable Media Player**: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

e. **GPS**: The Global Positioning System (GPS) consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision. A GPS navigation device uses GPS to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation.

32. Based on my training, experience, and research, I know that the Target Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, and GPS navigation device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

33. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

34. There is probable cause to believe that things that were once stored on the Target Device may still be stored there, for at least the following reasons:

a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

35. <u>Forensic Evidence</u>.  There is probable cause to believe that things that were once stored on the Target Device may still be stored there, for at least the following reasons:

    a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    c. Wholly apart from user-generated files, device storage media—in particular, internal hard drives—contain electronic evidence of how a device has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Device users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

    **d.**    Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

36. <u>Nature of Examination</u>.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Target Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

37. <u>Manner of Execution</u>.  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is probable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

38. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Target Device described in Attachment A to seek the items described in Attachment B.

## Attachment A

The property to be searched is a Black Schok Smartphone, Model: SV55216, SN: 0810708220003708, hereinafter the Target Device, which is currently within the Middle District of Pennsylvania, in the ATF's possession.

This warrant authorizes the forensic examination of the Target Device for the purpose of identifying electronically stored information described in Attachment B.

## Attachment B

1. All records on the Target Device described in Attachment A that relate to violations of Title 21, United States Code, Section 841(a)(1)(c) (Possession With Intent to Deliver), Title 21, United States Code, Section 846 (Conspiracy To Commit Possession With Intent to Deliver), and Title 18, United States Code, Section 924(c) (Possession of a Firearm in Furtherance of a Crime of Violence), and involve Akbar Turner, Wali Young, or both, since January 1, 2023, including:

   a. Location and travel data;
   b. Information related to sources of firearms (including names, addresses, phone numbers, or any other identifying information);
   c. Photographs and videos;
   d. Bank records, checks, credit card bills, account information, and other financial records;
   e. Customer lists;
   f. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions; and
   g. Information related to sources of drugs, e.g., names, addresses, phone numbers, or any other identifying information.

2. Evidence of user attribution showing who used or owned the Target Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.